[Cite as *State v. Griffin*, 2012-Ohio-503.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :     C.A. CASE NO. 24001

vs.                              :     T.C. CASE NO. 09CR1117/3

DE'ARGO GRIFFIN                  :     (Criminal Appeal from
                             Common Pleas Court)
    Defendant-Appellant          :

. . . . . . . . .

## O P I N I O N

Rendered on the 10th day of February, 2012.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Kirsten A. Brandt, Asst. Pros. Attorney, Atty. Reg. No. 0070162, P.O. Box 972, Dayton, Ohio 45422
    Attorneys for Plaintiff-Appellee

Kent J. Depoorter, Atty. Reg. No. 0058487, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, De'Argo Griffin, appeals from his convictions and sentences for possession of heroin, possession of criminal tools, and engaging in a pattern of corrupt activity,

{¶ 2} On April 10, 2009, Defendant and two co-defendants,

Anthony Franklin and Deshawn Foster, were indicted on one count of possessing of heroin, between ten and fifty grams, in violation of R.C. 2925.11(A). Defendant filed a motion seeking a separate trial from that of his co-defendants. On October 26, 2009, Defendant and his two co-defendants were indicted on additional charges: five counts of possessing criminal tools, R.C. 2923.24(A), and one count of engaging in a pattern of corrupt activity, R.C. 2923.32(A)(1), based upon multiple acts of possessing and selling crack cocaine and heroin between May 13, 2006 and April 2, 2009. Defendant filed an amended motion for a separate trial. The motion was denied. The court set a trial date of March 1, 2010.

{¶ 3} On February 23, 2010, Attorney William Daly entered his appearance as co-counsel for Defendant. Three days later, on February 26, 2010, Attorney Daley filed a motion on behalf of Defendant to relieve court-appointed counsel J. Allen Wilmes as counsel for Defendant, to substitute Attorney Daley as counsel for Defendant, and to continue the trial. The trial court overruled Defendant's motion on March 1, 2010, following a hearing.

{¶ 4} Defendant Griffin and co-defendant Franklin were tried together before a jury beginning on or about March 2, 2010. Co-defendant Foster had entered pleas of guilty before trial. Defendant filed a *pro se* motion renewing his request for substitution of counsel and a continuance of the trial so that

Attorney Daley could represent him. The trial court denied Defendant's motion. Following a jury trial, Defendant was found guilty of all charges. The trial court sentenced Defendant to concurrent prison terms totaling five years and a fifteen thousand dollar fine.

{¶ 5} Defendant timely appealed to this court from his conviction and sentence.

## FIRST ASSIGNMENT OF ERROR

{¶ 6} "APPELLANT'S CONVICTION UNDER R.C.2923.32(A)(1), ENGAGING IN A PATTERN OF CORRUPT ACTIVITY, MUST BE REVERSED BECAUSE INSUFFICIENCIES IN THE INDICTMENTS RENDER THE CONVICTION VOID FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO CHARGE AN OFFENSE."

{¶ 7} Defendant argues that the indictment is defective because it fails to allege each specific corrupt activity or offense in which Defendant participated that make up the Engaging in a Pattern of Corrupt Activity charge in violation of R.C. 2923.32(A)(1). We addressed this same argument in the appeal of Defendant's co-defendant, Anthony Franklin, and concluded that the indictment charging Engaging in a Pattern of Corrupt Activity in the words of the applicable statute, R.C. 2923.32(A)(1), is not defective because it fails to specify each corrupt activity in which Defendant is alleged to have participated. *State v.*

*Franklin*, 2nd Dist., Montgomery App. Nos. 24011, 24012, 2011-Ohio-6802. For the reasons stated in our opinion in *Franklin*, Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS BY DENYING THE APPELLANT'S MOTION TO BE REPRESENTED BY RETAINED COUNSEL OF HIS CHOICE."

{¶ 9} Defendant argues that the trial court abused its discretion when it denied his requests to substitute his newly-retained counsel for his court appointed counsel, and for a continuance of the trial made necessary by the requested substitution.

> "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.
>
> A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not

enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

*AAAA Enterprises, Inc. v. River Place Community Redevelopment,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 10} The decision whether to grant or deny a request for a continuance is a matter left to the sound discretion of the trial court. A reviewing court will not disturb that decision absent an abuse of discretion. *State v. Powell*, 49 Ohio St.3d 255, 552 N.E.2d 191 (1990); *Ungar v. Serafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

{¶ 11} In *State v. Rash*, 111 Ohio App.3d 351, 354, 676 N.E.2d 167, (2nd Dist. 1996), this court observed:

In *Ungar,* the United States Supreme Court wrote:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to

defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is made. (Emphasis added and citations omitted.) *Ungar* at 589, 84 S.Ct. at 849-850, 11 L.Ed.2d at 931.

The Ohio Supreme Court has adopted and followed a balancing test from *Unger* that requires a "reviewing court to weigh potential prejudice against 'a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *Powell,* 49 Ohio St.3d at 259, 552 N.E.2d at 196, citing *Unger,* 67 Ohio St.2d at 67, 21 O.O.3d at 43, 423 N.E.2d at 1080. In *Powell,* the Supreme Court listed relevant factors to be considered: (1) length of delay sought, (2) previous continuances sought or granted, (3) inconvenience to all involved, (4) legitimacy of reason for delay, and (5) whether the defendant had caused the delay. *Id.*

{¶ 12} The decision whether or not to remove court appointed counsel and allow substitution of new counsel is also addressed

to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765, 2001-Ohio-112; *State v. Coleman*, 2nd Dist. Montgomery No. 19862, 2004-Ohio-1305.

{¶ 13} Defendant wanted a continuance of the trial so that his newly-retained counsel, William Daley, could be substituted for his court-appointed attorney, J. Allen Wilmes. In evaluating a request for substitute counsel, the court must balance the accused's right to counsel of his choice against the public's interest in the prompt and efficient administration of justice. *Murphy*.

{¶ 14} Attorney Daley first entered his appearance as co-counsel on February 23, 2010. Then, on February 26, 2010, the Friday before trial was scheduled to commence on Monday, March 1, 2010, Daley filed a motion seeking to relieve court appointed counsel, J. Allen Wilmes, substitute himself as counsel for Defendant, and continue the trial to allow Daley time to prepare. Daley's motion indicated that the reason Defendant requested substitution of counsel and a continuance of the trial was due to a complete lack of communication between Defendant and court appointed counsel prior to trial; that they had not yet even discussed the case. The trial court denied Defendant's request for substitution of counsel and a continuance of the trial, finding

that it was ill-timed and a delaying tactic.

{¶ 15} Defendant's "eleventh hour" request for substitution of counsel and a continuance of the trial was filed the Friday afternoon before trial was scheduled to begin on Monday, March 1, 2010. The trial had previously been continued three times, once at Defendant's request. Defendant knew at least six weeks earlier that he intended to retain William Daley to represent him, and Daley knew he would have to request a continuance because of a conflict with another case scheduled before a different judge.

{¶ 16} Despite the fact that both Defendant and Attorney Daley were in court on February 18, 2010 on a motion to suppress, nothing was said at that time about needing a continuance. Furthermore, in his February 23, 2010 notice of appearance as co-counsel, Attorney Daley made no request for a continuance. That request was not made until the afternoon of the last business day before the trial was to begin. By then, potential jurors had been ordered to appear in court at 9:00 a.m. on Monday morning, March 1, 2010, and over forty witnesses had been subpoenaed by the State for the trial.

{¶ 17} The trial court found that the lack of communication between Defendant and his court-appointed counsel was due to Defendant's unwillingness to cooperate. Attorney Wilmes had sent several letters and made repeated efforts to contact Defendant,

which were unsuccessful. When a meeting was finally scheduled, Defendant failed to appear. When Defendant called Attorney Wilmes on the Friday before the trial began in order to discuss the case, Wilmes was out of town at a seminar and unavailable. The trial court concluded that Defendant caused the lack of communication problem by failing to cooperate with his court appointed counsel. On these facts and circumstances, we find no abuse of discretion in denying Defendant's eleventh hour request for a substitution of counsel and a continuance of the trial.

{¶ 18} Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

{¶ 19} "THE TRIAL COURT DEMONSTRATED BIAS IN FAVOR OF THE STATE AND AGAINST APPELLANT."

{¶ 20} Defendant argues that the trial court demonstrated judicial bias against him and in favor of the State.

{¶ 21} In *Weiner v. Kwait*, 2nd Dist. Montgomery No. 19289, 2003-Ohio-3409, we stated:

> Judicial bias is "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State v.*

*LaMar,* 95 Ohio St.3d 181, 189, *2002-Ohio-2128* (citations omitted).

Trial judges are "presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity." *Eller v. Wendy's Internatl., Inc.*, (2000), 142 Ohio App.3d 321, 340, 755 N.E.2d 906 (citations omitted). In *Eller,* the court also noted that "[t]he existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." *Id.*

{¶ 22} Defendant first argues that the trial court demonstrated bias and prejudice against him when it refused to allow his retained counsel, William Daley, to participate in the hearing held on March 1, 2010 to determine whether Daley would be substituted as counsel for Defendant and allowed to represent Defendant at trial. Defendant's claim is based upon Daley's affidavit, which was attached to Defendant's pro se renewal motion for substitution of counsel. Daley stated that the trial judge told him he could not participate in the hearing. Daley attributes the judge's decision to a history of "these same type of issues" between Daley

and the judge, which Daley "believes to be a factor in the court's determination not to allow Defendant to retain private counsel of Defendant's choice." Affidavit at ¶ 12, 20.

{¶ 23} The judge explained on the record the conversation he had with Attorney Daley, and the judge specifically denied telling Daley that he could not attend or participate in the hearing. The judge told Daley he would not be Defendant's counsel at that hearing. The judge left the matter of Daley's presence at the hearing up to Daley.

{¶ 24} It appears that there was some confusion or misunderstanding about whether Daley would appear for the hearing or instead be informed of the outcome. The hearing was scheduled for 9:00 a.m. Daley appeared at 10:00 a.m. The trial judge saw Daley but was occupied with other matters at that time. When the judge finished his other business, he inquired where Daley was, but was told Daley had left. Therefore, the court did not have an opportunity to talk with Daley or put him on the record about the substitution of counsel issue.

{¶ 25} While the judge may have expressed some frustration over Daley's absence, the record does not support Defendant's contention that the court prevented Daley from attending the hearing or that the judge based his decision denying Defendant's request for substitution of counsel and a continuance of the trial on Daley's

decision not to attend the hearing. No hostility or ill will against Defendant on the part of the trial court is demonstrated.

{¶ 26} Defendant additionally argues that the trial court demonstrated bias in favor of the State by questioning a State's witness in a manner that intimated to the jury the court's opinion of the evidence the witness offered or the witness' credibility.

{¶ 27} A trial judge is allowed to interrogate a witness in an impartial manner, provided the court's questioning does not indicate to the jury its opinion on the evidence or the credibility of the witness. *State ex rel. Wise v. Chand* (1970), 21 Ohio St.2d 113; Evid.R. 614(B).

{¶ 28} In *Jenkins v. Clark*, 7 Ohio App.3d 93, 97, 454 N.E.2d 541 (2nd Dist. 1982), this court stated:

> In regard to the examination of witnesses, the trial judge is something more than a mere umpire or sergeant at arms to preserve order in the courtroom. He has active duties to perform in maintaining justice and in seeing that the truth is developed and may for such purpose put proper questions to the witnesses, and even leading questions. *Gilhooley v. Columbus Ry. Power & L. Co.* (1918), 20 Ohio N.P. (N.S.) 545. If at any time during the trial of a cause a judge is prompted, in the interest of justice, to develop facts germane to an issue of fact

to be determined by the jury, it is proper that he do so. *Dependabilt Homes, Inc. v. Haettel* (1947), 81 Ohio App. 422.

* * *

In the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the court acted with impartiality in attempting to ascertain a material fact or to develop the truth. *Gilhooley, supra.*

*Jenkins, supra,* at 98.

{¶ 29} State's witness, Gary R. Shaffer, a forensic chemist from the Miami Valley Regional Crime Lab, testified regarding his testing of various drugs. Shaffer expressed uncertainty during his testimony whether "within a reasonable scientific certainty," a legal term, was the same or less than "absolute certainty." That prompted the trial court to question Shaffer about the reliability and accuracy of his testing as follows:

{¶ 30} "THE COURT: Believe it or not the Court has a question, clarification if I might.

{¶ 31} "Earlier, sir, you testified that you weren't sure – you had testified that you use some legal terms and you weren't sure what they meant. So I want to just clarify some part of your testimony here.

{¶ 32} "You – the testimony that you've given regarding the testing of the cocaine, is it based on your reliable scientific information?

{¶ 33} "THE WITNESS: Yes, sir.

{¶ 34} "THE COURT: Is the procedure that you use, are the procedures and testing that you use are those based on objectively verifiable and widely accepted facts or principles?

{¶ 35} "THE WITNESS: Yes, sir.

{¶ 36} "THE COURT: Is the design of the procedure and the test, is it reliably, does it reliably implement the three upon which it's based?

{¶ 37} "THE WITNESS: Yes, sir.

{¶ 38} "THE COURT: And in this case – particular procedure test that you did here, was that conducted in a way that yields an accurate result?

{¶ 39} "THE WITNESS: Yes, sir.

{¶ 40} "THE COURT: And are you reasonably certain of the result that you got?

{¶ 41} "THE WITNESS: Yes, sir, I am.

{¶ 42} "THE COURT: Okay. Thank you.

{¶ 43} "Does that prompt any questions?

{¶ 44} "MS. PARSON: No, thank you, Your Honor.

{¶ 45} "THE COURT: Okay.  Mr. O'Brien?[1]

{¶ 46} "MR. O'BRIEN: No questions.

{¶ 47} "THE COURT: Okay.  Thank you very much."  (Trial T. at 727-728.)

{¶ 48} The court questioned Shaffer briefly in order to ascertain whether his tests were based on reliable scientific information, if the procedure he used was based on objectively verifiable and widely accepted scientific principles, if the test yielded accurate results, and whether Shaffer was reasonably certain of the results.  See Evid.R. 703.  The court's questions, while leading, were nevertheless impartial and not aimed at eliciting partisan testimony, but were merely intended to elicit the facts needed to decide the issue.  The trial court did not demonstrate bias or prejudice for or against either party.

{¶ 49} Defendant's third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

{¶ 50} "THE JOINDER OF CO-DEFENDANT ANTHONY FRANKLIN SUBSTANTIALLY PREJUDICED APPELLANT'S DUE PROCESS RIGHT TO A FAIR TRIAL UNDER THE UNITED STATES CONSTITUTION."

{¶ 51} Defendant argues that the trial court abused its discretion and denied him due process and a fair trial by denying

---

[1]Counsel for co-defendant Franklin.

his request for a trial separate from that of his co-defendant, Anthony Franklin.

{¶ 52} In *State v. Humphrey*, 2nd Dist., Clark App. No. 02CA0025, 2003-Ohio-2825, we stated:

Crim.R. 8(B) governs joinder of defendants and provides:

"Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."

Crim.R. 14 provides for relief from prejudicial joinder and states in relevant part:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice

requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

The decision whether to grant a motion for separate trials is a matter resting within the trial court's sound discretion, and a reviewing court will not disturb that decision on appeal absent a showing that the trial court abused its discretion. *State v. Torres* (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288.

{¶ 53} Defendant and his co-defendant, Anthony Franklin, were jointly indicted for possessing heroin, possessing criminal tools, and engaging in a pattern of corrupt activity based upon multiple acts of possessing and selling crack cocaine and heroin. The predicate acts/offenses occurred on eight separate occasions between May 13, 2006 and April 2, 2009. Both Defendant and Franklin were present during many of these incidents. Joinder was proper because these defendants participated together in the predicate acts, and the crimes and these defendants were connected by the same acts, the same evidence, and the same witnesses. Had Defendant and Franklin been tried separately, the juries would

hear much of the same evidence.

{¶ 54} Defendant argues that he was prejudiced by the joinder because of the admission of a statement of Franklin's that incriminated Defendant, resulting in a *Bruton* error. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). A *Bruton* problem arises in a joint trial of two or more defendants when evidence of a confession or statement by a non-testifying defendant is admitted that implicates the other defendant(s) in criminal activity. *Id.*; *Humphrey*. Here, the State did not present at the trial any statements made by Franklin that implicated Defendant in criminal activity. Therefore, no *Bruton* problem arises.

{¶ 55} Furthermore, the evidence presented at trial as to the predicate offenses was not so complex that the jury was incapable of segregating the proof as to each defendant. It is clear from the evidence which of the two defendants participated in which predicate act. The evidence relating to Defendant Griffin was clear and direct, and established that Defendant was involved in the incidents/offenses that occurred on October 16, 2008, January 22, 2009, March 17, 2009, and April 1, 2009. The trial court instructed the jury separately on each of these incidents and instructed the jury to consider each defendant separate from the other. Defendant and Franklin were properly tried together,

and Defendant has failed to demonstrate that he suffered prejudice as a result of the joinder.

{¶ 56} Defendant's fourth assignment of error is overruled.

FIFTH ASSIGNMENT OF ERROR

{¶ 57} "THE TRIAL COURT SHOULD HAVE ORDERED A MISTRIAL BASED UPON PROSECUTORIAL MISCONDUCT."

{¶ 58} Defendant argues that he was denied a fair trial as a result of prosecutorial misconduct which included repeatedly showing the jury a cardboard poster that labeled Defendant and his co-defendant, Anthony Franklin, as part of a "drug trafficking group." We addressed this same argument in the appeal of Defendant's co-defendant, Anthony Franklin, and found that it lacked merit because no prosecutorial misconduct was demonstrated to the extent that the poster was used not as evidence but rather for demonstrative purposes only, to help the jury keep track of the incidents, and the jury was instructed accordingly. *State v. Franklin,* 2nd Dist. Montgomery Nos. 24011, 24012, 2011-Ohio-6802. For the reasons stated in our opinion in *Franklin*, Defendant's fifth assignment of error is overruled.

SIXTH ASSIGNMENT OF ERROR

{¶ 59} "THE REMOVAL OF AFRICAN-AMERICAN JURORS BY PEREMPTORY CHALLENGES VIOLATED APPELLANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS, RESULTING IN THE DENIAL OF A FAIR TRIAL."

{¶ 60} Defendant argues that the trial court committed reversible error when it allowed the State to use peremptory challenges to dismiss two African-American jurors during voir dire based upon racial discrimination. We addressed this same argument in the appeal of Defendant's co-defendant, Anthony Franklin, and concluded that it lacked merit because the State provided race neutral explanations for its dismissal of both jurors. *State v. Franklin*, 2nd Dist. Montgomery 24011 and 24012, 2011-Ohio-6802. For the reasons stated in our opinion in *Franklin*, Defendant's sixth assignment of error is overruled. The judgment of the trial court will be affirmed.

FAIN, J., concurs.

FROELICH, J., concurring:

{¶ 61} "A trial judge 'need take no vow of silence. He is there to see that justice is done or at least to see that the jury have a fair chance to do justice.' He or she 'ought to be always the guiding spirit and the controlling mind at a trial.'" (Citations omitted.) *Commonwealth v. Dias*, 373 Mass. 412, 416, 367 N.E.2d 623 (1977). Further, a trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant. *State v. Blankenship*, 102 Ohio App.3d

534, 548, 657 N.E.2d 559 (12th Dist.1995).

{¶ 62} At the same time, a judge must keep in mind that the State has the duty and burden to prove a defendant's guilt and should not intentionally fill in gaps in the prosecution's or defendant's case.  A judge in our adversary system is not an active participant in the gathering or prosecution of evidence.  *See*, *e.g.*, Reamey, *Innovation or Renovation in Criminal Procedure: Is the World Moving Toward a New Model of Adjudication?*, 27 Ariz. J. Int'l & Comp. L. 693, fn. 18 (2010).

{¶ 63} I concur with the majority that, with the record before us, the judge did not demonstrate bias or abandon his neutral role.

. . . . . . . . . .

Copies mailed to:

Kirsten A. Brandt, Esq.
Kent J. Depoorter, Esq.
Hon. Steven K. Dankof